Wiley NICHOLS et ux.,
Plaintiffs-Appellants,

v.

Wesley P. ODLE, et ux.,
Defendants-Appellees.

Court of Appeals of Tennessee,
Western Section.

Aug. 30, 1974.

Certiorari Denied by Supreme Court
Dec. 30, 1974.

Bryson & Bryson, Woodbury, for plaintiffs-appellants.

Marshall E. Duggin, Woodbury, for defendants-appellees.

CARNEY, Presiding Judge.

This is a boundary line lawsuit tried before the Chancellor without a jury. The Chancellor found in favor of the defendants, Wesley P. Odle and wife. The plaintiffs, Wiley Nichols and wife, have appealed and assigned error.

The plaintiffs, Nichols and wife, are the owners of approximately 77 acres of land located in the 11th District of Cannon County, Tennessee, situated on both sides of the Hurricane Creek Road. Defendants, Wesley P. Odle and wife, are the owners of approximately 75 acres of land also lying on both sides of Hurricane Creek Road and joining the appellants' lands on the south. Both plaintiffs and defendants trace title to a common source, Mrs. Glaydus Davis, who sold both tracts of land at public auction on August 17, 1959. Tract No. 1 containing 77

acres was purchased by the appellants, Wiley Nichols and wife. Tract No. 2 was purchased by Burlie Cook who later sold tract No. 2 to Palmer Cook. Palmer Cook sold to the defendants, Wesley Odle and wife, on July 19, 1972.

On the date of the auction sale it was publicly announced that purchaser of tract No. 2 would also receive a small tract of land carved out of the southern part of tract No. 1 so as to give access for livestock to a spring located on tract No. 1. The description of the "one acre" lot carved out of tract No. 1 and conveyed to the purchaser of tract No. 2 is as follows:

"Except for about one acre in addition thereto, Beginning in the South line of Tract No. 1, running thence North with the East margin of the Hurricane Creek Road to the center of the spring, running thence in a Southeasterly direction to the line of Tract No. 1, running thence in a Westerly direction with the line of Tract No. 1 to the beginning, so as to contain one acre."

The bone of contention between the parties in this case is the location of two openings to Blow Hole Cave which underlies the lands of plaintiffs, defendants, and probably other owners of the area. One of the openings to the cave is natural and is filled with water so that aqualungs are necessary for one to enter the cave by means of the natural opening. This opening has been called "The Blow Hole." The other opening is man-made located some 20 feet away and is now covered with a steel door. The determinative question before this Court is whether the two openings to the cave are located on the "one acre" access plot described above or whether they are located on tract No. 1 east of the east line of the access "one acre."

Shortly after the plaintiff purchased tract No. 1 in 1959, his son, Eddie Nichols, and others dug the second or man-made entrance into the cave with the knowledge of Mr. Palmer Cook, second purchaser of

tract No. 2. A wooden gate was placed in the entrance to the cave and kept locked by the appellants for a period of some six or seven years. Another gate was erected in June, 1972, by Palmer Cook and Eddie Nichols.

In 1972 Palmer Cook listed his tract No. 2 for sale with a real estate agent who advertised that the tract contained a cave. The defendant, Wesley P. Odle, a resident of Louisville, Kentucky, designates himself as a "spelunker" and he purchased tract No. 2 from the real estate agent on the assurance that the tract did, in fact, contain a cave and impliedly contained an entrance from tract No. 2. After the defendants learned that the plaintiffs were contending that both entrances to the cave were located on plaintiffs' tract No. 1, the defendants, Odle and wife, put a lock on the man-made entrance. Thereupon, the present litigation followed to determine the boundary line.

His Honor the Chancellor found the issues in favor of the defendants; that both the man-made and the natural opening to the cave were, in fact, included within the boundaries of the one-acre access plot carved out of tract No. 1 and added to tract No. 2. The Chancellor fixed the boundary line between the Nichols tract No. 1 and the Odle tract No. 2 as follows:

"The boundary line between the Nichols and Odle realty should be determined, fixed and established as beginning on an iron pin in the center of the spring branch in the East margin of Hurricane Public Road; it being considered by the Court for this purpose that the Public Road at this point runs true North and South, and running thence from said iron pin due East (90°) to an iron pin in the old fence line (Nichols West line) in Tract No. 1, this being Nichols 77 acre tract conveyed to them by Glaydus Davis on August 17, 1959, and recorded in Deed Book 57, page 371, Register's Office Cannon County, Tennessee."

Upon the trial there was an irreconcilable conflict in the testimony of the plaintiffs and the defendants as to the location of the entrances to the cave with reference to the Hurricane Creek Road and the springs. The springs mentioned in the testimony are called generally the Blow Hole Springs. Water from the spring or springs runs westwardly under the Hurricane Creek Road via two culverts into Hurricane Creek. The spring or springs are located some 20 to 25 feet east of the east margin of the Hurricane Creek Road.

The principal exhibits were two maps: one submitted by plaintiff Nichols and one submitted by defendant Odle. According to exhibit No. 4 drawn by Nichols, the entrances to the cave are almost due east of the springs, whereas according to exhibit No. 5, the map drawn by Odle, the entrances to the cave are located considerably south or southeast of the location of the spring.

Both plaintiffs and defendants testified to other natural objects not shown on the respective maps. According to defendant Odle's survey if the boundary line between the two tracts were placed as insisted by the plaintiffs, there would be only 0.15 acre in the access area carved out of tract No. 1 and joined to tract No. 2. Defendants' map, exhibit 5, showed that the line would have to run in a northeasterly direction from the east margin of the road to convey a full one acre.

Plaintiffs were corroborated by witnesses who lived in the community that the access "one acre" did not include the Blow Hole. The one acre was never fenced and the terrain is mostly steep and rough.

Mr. O. N. Pedigo, who has been in the real estate business forty years at Route 3, Woodbury, Tennessee, Cannon County, testified that he represented the seller, Mrs. Glaydus Davis, at the auction in 1959. He said the entrance to the Blow Hole (natural entrance to the cave) was on the one acre access plot. The Chancellor described Mr. Pedigo as a "disinterested witness." The man-made entrance is only 29 feet from the "Blow Hole." There is no contention that

the disputed line runs between the natural and man-made entrances. The testimony of Mr. Pedigo tends to corroborate defendants' map, exhibit No. 5. Mr. Pedigo was not the same realtor who sold tract No. 2 to Mr. Odle.

The evidence does not preponderate against the finding of the Chancellor that the two openings to the cave are located on the property sold to the defendants. T.C.A. Section 27–303. The question of adverse possession is not involved in this case. We lean to the view that His Honor the Chancellor should have allowed the defendant the full acre of ground shown on defendants' map, exhibit 5. The line as fixed by the Chancellor will give the defendants approximately one-half acre. The defendants have not appealed from the Chancellor's decree.

We find no merit in the plaintiffs' contention that the Chancellor erred in considering that the public road ran north and south when, in fact, it ran a little bit west of north. We construe His Honor the Chancellor's decree to mean simply that the line should be fixed by running at right angles eastward from the east margin of the public road to the east line of the original tract and we concur.

All of the assignments of error are overruled. The cause will be remanded to the Chancery Court of Cannon County for the location of said line in accordance with the directions of the Chancellor and this opinion. The costs in this Court will be taxed to the plaintiffs and the costs in the lower Court will abide the action of His Honor the Chancellor.

MATHERNE and NEARN, JJ., concur.